UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAX MATRIX TECHNOLOGIES, LLC<br><br>            Plaintiff,<br>     v.<br><br>WEGMANS FOOD MARKETS, INC.<br><br>            Defendant. | Civ. A. No. 13-6223<br><br>JURY TRIAL DEMANDED |

## ANSWER TO COUNTERCLAIMS

Plaintiff, Tax Matrix Technologies, LLC, by its attorneys, Rosenthal Lurie LLC, hereby files this Answer to the Counterclaims of Defendant, Wegmans Food Markets, Inc., and responds as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted. By way of further response, the Maryland Auditors also reviewed various capital records for four locations, but they were not completed during the trip. The Maryland Auditors were not planning to make a return trip to Rochester to continue their review of the capital records, but Tax Matrix advocated on behalf of Wegmans and convinced the Maryland Auditors to schedule a second trip.

8. Denied as stated. Admitted only that in or around the week of October 29, 2012, the Maryland Auditors made a second trip to Rochester, at the express request of Tax

Matrix.  Denied that the Maryland Auditors' review of documents was, at least in their view, "preliminary" or "incomplete."  By way of further response, while Wegmans and Tax Matrix believed at the time that the State of Maryland's review of records up to that point was incomplete because it did not review all of the documentation made available to it, the State of Maryland did not agree, and proceeded to send Wegmans a notice of assessment and supporting work papers on December 12, 2012, asserting that Wegmans owed $4,639,411.87 in tax (the "First Notice of Deficiency").  The First Notice of Deficiency marked the first time that the State of Maryland furnished Wegmans or Tax Matrix with a full set of workpapers accompanied by a Schedule A, complete with an "Acknowledgement of Audit Closing Meeting" for the taxpayer's signature.[1]

        9.      Denied.  Admitted only that on or about December 12, 2012, the State of Maryland sent Tax Matrix (Wegmans' representative) the First Notice of Deficiency.  The First Notice of Deficiency is a writing, which speaks for itself.  By way of further response, Wegmans is mistaken in its understanding and characterization of the origin and purpose of the "developed error factor."  The "developed error factor" was calculated by the State of Maryland based on the four locations (A-1 Woodmore, A-2 Frederick, A-3 Bel Air, and A-4 Hunt Valley) for which it *had* reviewed invoices and other relevant documents.  Because it had not reviewed invoices or other documents pertaining to the other four locations (A-5 Columbia Site, A-6 Columbia Bldg.,

---

[1] Neither the taxpayer (Wegmans) nor the taxpayer's advocate/representative (Tax Matrix) has the luxury of controlling *when* in the audit process the taxing authorities decide to issue an assessment.  (Nor can they control the amount or the components of an initial assessment.)  If they did, the fee structure of the Letter Agreement would be dramatically changed, since the "starting point" for purposes of calculating Tax Matrix's contingent fee would essentially be the same as the "ending point."  It is worth noting that Tax Matrix had actually already been working on the Maryland Project for approximately one year *prior* to the First Notice of Assessment, without compensation and without even knowing what the "starting point" would be.  Such is the nature of these engagements.

A-7 Crofton Site, and A-8 Crofton Bldg.) up to that point, the State of Maryland did not apply its "developed error factor" at all in the First Notice of Deficiency, but rather taxed the transactions for these four locations in full, and did so intentionally, as part of an aggressive audit stance.

10.   Denied.  To the contrary, with regard to the First Notice of Deficiency, the State of Maryland intended to tax the transactions for the four un-reviewed locations (A-5, A-6, A-7, and A-8) in full precisely because it had not reviewed the documentation for those locations (despite these records being made available and despite Tax Matrix's advocating for the Maryland Auditors to review them).  Despite the fact that the "developed error factor" appeared on Schedule B of the First Notice of Deficiency, the State of Maryland was not yet utilizing a "developed error factor" method with regard to the First Notice of Deficiency.  By way of further response, *see* ¶ 9 above and ¶ 11 below.

11.   Denied.  To the contrary, the decision by the State of Maryland to tax the transactions for the four un-reviewed locations in full, rather than apply the "developed error factor" from the four locations it had reviewed, was intentional, and *not* the result of a "typographical and/or calculation error" as Wegmans alleges.[2]  Upon receipt of the First Notice of Deficiency, Tax Matrix's Melissa Myers contacted the Maryland Auditor and her supervisor to argue, on behalf of Wegmans, that it was unfair and unreasonable to tax the four unreviewed locations in full because the documents pertaining to these locations *had* been made available to the Maryland Auditors during their previous trip to Rochester.  Ms. Myers advocated for

---

[2] Tax assessments often contain calculation errors by taxing authorities.  Finding and exposing these errors is one of several reduction strategies employed by audit defense consultants, such as Tax Matrix. (Others may include challenging the methodologies used, disputing the inclusion or exclusion of underlying invoices and documentation, and advocating for the application of credits or overpayments.)  Indeed, if a tax assessment contained no errors to begin with, then there would be no refunds to be had.  It is an adversary process, and taxing authorities may differ greatly in their level of aggressiveness at any point during an audit.

3

Wegmans and requested that the Maryland Auditors make a third trip to Rochester to review the remaining records.  The State of Maryland responded to Ms. Myers that a third trip to Rochester was not feasible and that Wegmans was "lucky" to have previously received even a second visit, but that they would discuss internally for an alternative method in order to address to Tax Matrix's argument of unfairness.  Approximately one week later, on December 17, 2012, the State of Maryland furnished Tax Matrix with a second notice of deficiency and supporting workpapers (the "Second Notice of Deficiency") wherein it now applied the "developed error factor" from the four reviewed locations to the four un-reviewed locations.  This change, which lowered Wegmans' tax liability to $2,153,430.62, was a direct result of Tax Matrix's advocacy on behalf of its client.

    12. Denied.  It is specifically denied that the State of Maryland "merely intended the work papers to serve as a notice to Wegmans of what documents had been provided to, and reviewed by, the State and what additional information was needed."  If that were the case, there would be no reason to include all of the workpapers together with the First Notice of Assessment, as opposed to providing only the capital workpapers.  The Maryland Auditors had already made two visits to Rochester and had indicated their unwillingness to make any further trips.  The State of Maryland indeed intended the First Notice of Deficiency to be a notice of deficiency or assessment of taxes owed, and, as far as it was concerned, by December 12, 2012, the audit was completed and Wegmans owed $4,639,411.87 in taxes.  As mentioned in ¶ 8 above (including its footnote), the First Notice of Deficiency marked the first time that the State of Maryland furnished Wegmans or Tax Matrix with a full set of workpapers accompanied by a Schedule A, complete with an "Acknowledgement of Audit Closing Meeting" for the taxpayer's signature.  (Prior to that, the State of Maryland had only provided partial subsets of documents in

its correspondence with Tax Matrix, and did not provide an "Acknowledgement of Audit Closing Meeting" form.)  Upon receipt of the First Notice of Deficiency, had Tax Matrix (on Wegmans' behalf) not taken affirmative steps to keep the audit open, the audit would have been closed, and Wegmans would have had to pay the assessment, plus interest and penalty, and then pursue an appeal.  Instead, Tax Matrix (on Wegmans' behalf) advocated for the audit to remain open and further advocated for a reduction in the assessment.  By way of further response, *see* ¶¶ 9 and 11 above.

        13.     Denied.  *See* ¶¶ 9 and 11 above.

        14.     Denied.  Admitted only that the First Notice of Deficiency contained an "Acknowledgement of Audit Closing Meeting" – which indicated that the State of Maryland considered the audit closed and was issuing its assessment – and that Wegmans did not sign the Acknowledgment of Audit Closing Meeting with regard to the First Notice of Deficiency.  Denied that it has always been Wegmans' practice to do otherwise.  To the contrary, and consistent with common taxpayer practice, there have been previous audit engagements between Wegmans and Tax Matrix wherein Wegmans had, as here, elected to reduce the assessment while the audit remained open.  In fact, there is a current audit by the State of New York in which Wegmans, with Tax Matrix's assistance, has elected to fight the assessment while the audit remains open, as opposed to filing for reductions post-audit.

        15.     Denied.  It is specifically denied that the State of Maryland "on its own initiative, discovered its error on the initial work papers."  The State of Maryland's calculation of tax liability in the First Notice of Deficiency was not the result of a "typographical error."  *See* ¶¶ 9 and 11 above.  Admitted only that the State of Maryland issued a *third* notice of deficiency and supporting work papers on or about February 28, 2013 (the "Third Notice of Deficiency"), which

reflected further reductions in Wegmans' tax liability achieved through Tax Matrix's efforts and advocacy. The Third Notice of Deficiency is a writing, which speaks for itself. By way of further response, the State of Maryland agreed to use the "developed error factor" method starting with the *Second* Notice of Deficiency, and as a direct result of Tax Matrix's advocacy on behalf of Wegmans, as set forth in ¶ 11 above.

16. Denied. The reduction in Wegmans' tax liability to the State of Maryland was achieved through the advocacy of Tax Matrix, not through the State of Maryland "discover[ing] and correct[ing] [an] error on its own initiative[.]" *See* ¶¶ 9 and 11 above.

17. Denied. Admitted only that Melissa Myers sent the referenced e-mail on March 4, 2013. Denied that Tax Matrix has attempted to mislead Wegmans in any way. Ms. Myers' e-mail of March 4, 2013 was truthful. By way of further response, *see* ¶ 16 above.

18. Denied. Admitted only that Mike Espenshade sent the referenced letter on or about October 11, 2013. Denied that Tax Matrix has attempted to mislead Wegmans in any way. Mr. Espenshade's letter of October 11, 2013 was truthful. By way of further response, *see* ¶ 16 above.

19. Denied. By way of further response, *see* ¶¶ 12 and 18 above.

20. Denied. By way of further response, *see* ¶ 16 above.

RESPONSE TO COUNT I OF COUNTERCLAIM

21. Tax Matrix incorporates by reference its responses to paragraphs 1 through 20 as if set forth at length herein.

22. The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.

23. The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required. By way of further response, it is denied that Tax

Matrix has engaged in any immoral, dishonest, or wrongful conduct.  Tax Matrix is entitled to be paid its contingent fee pursuant to the Letter Agreement.

24.     The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.  By way of further response, it is denied that Wegmans has been harmed in any way, and it is denied that Tax Matrix has engaged in any dishonesty.  In fact, Wegmans has been unjustly enriched because it has received the benefits of Tax Matrix's services in connection with the Maryland Project and has not paid Tax Matrix anything for those services.

25.     The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.  By way of further response, under the "American Rule," Wegmans is not legally entitled to attorneys' fees.

RESPONSE TO COUNT II OF COUNTERCLAIM

26.     Tax Matrix incorporates by reference its responses to paragraphs 1 through 25 as if set forth at length herein.

27.     The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.

28.     The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.  By way of further response, it is denied that Tax Matrix has engaged in any dishonest or misleading conduct.  Tax Matrix is entitled to be paid its contingent fee pursuant to the Letter Agreement.

29.     The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.  By way of further response, it is denied that Wegmans has been harmed in any way, and it is denied that Tax Matrix has engaged in any dishonesty.  In fact, Wegmans has been unjustly enriched because it has received the benefits of Tax Matrix's

services in connection with the Maryland Project and has not paid Tax Matrix anything for those services.

30. The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.  By way of further response, under the "American Rule," Wegmans is not legally entitled to attorneys' fees.

## RESPONSE TO COUNT III OF COUNTERCLAIM

31. The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.

32. The Letter Agreement is a writing, which speaks for itself.

33. Denied.  Tax Matrix did not issue a press release at all.

34. The allegations contained in this paragraph state conclusions of law to which no responsive pleading is required.

35. Tax Matrix is without knowledge sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 35 of the Counterclaim.  The remaining allegations are denied as conclusions of law, to which no responsive pleading is required.

## PRAYER FOR RELIEF ON COUNTERCLAIMS

WHEREFORE, Tax Matrix requests judgment in its favor and against Wegmans on all of the Counterclaims, along with an award of costs, attorneys' fees to the extent permitted by law,[3] and such other relief as the Court deems proper.

## DEFENSES

36. Counts I and II of the Counterclaim are barred by the American Rule.

---

[3] As Wegmans' request for attorneys' fees has so far been permitted to stand, so too does Tax Matrix expressly request an award of attorneys' fees under the same reasoning.

37. Count III of the Counterclaim fails because Tax Matrix was privileged to file the Complaint.

38. Count III of the Counterclaim fails because Tax Matrix did not disclose in the Complaint any information that would be deemed confidential under the Letter Agreement.

39. Count III of the Counterclaim fails because the Letter Agreement permits Tax Matrix to disclose information to further the process therein described, which includes Tax Matrix getting paid its contingent fee.

Dated:  May 23, 2014	Respectfully submitted,

                                                                    /s/                    
Stuart D. Lurie, Esq.
ROSENTHAL LURIE LLC
486 Thomas Jones Way, Suite 210
Exton, PA 19341
(484) 693-0788 – Tel.
(215) 600-1728 – Fax
Stuart@RosenthalLurie.com
*Attorney for Plaintiff, Tax Matrix Technologies, LLC*

## CERTIFICATE OF SERVICE

I, Stuart D. Lurie, hereby certify that the foregoing Answer to Counterclaims was served on May 23, 2014 via the ECF system upon the following:

Edward A. Greenberg, Esq.
WARD GREENBERG HELLER & REIDY LLP
1835 Market St., Suite 650
Philadelphia, PA 19103
egreenberg@wardgreenberg.com
*Counsel for Defendant Wegmans*

David M. Knapp, Esq.
WARD GREENBERG HELLER & REIDY LLP
3000 State St.
Rochester, NY 14614
dknapp@wardgreenberg.com
*Counsel for Defendant Wegmans*

Daniel P. Purcell, Esq.
WARD GREENBERG HELLER & REIDY LLP
3000 State St.
Rochester, NY 14614
dpurcell@wardgreenberg.com
*Counsel for Defendant Wegmans*

/s/
Stuart D. Lurie