IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAX MATRIX TECHNOLOGIES, LLC, | : | CIVIL ACTION |
| | : | No. 13-6223 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WEGMANS FOOD MARKETS, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                               April 19, 2017

On June 6, 2016, following the conclusion of a six-day jury trial and the rendering of a jury verdict, the Court entered judgment in favor of Plaintiff Tax Matrix Technologies, LLC ("Tax Matrix") and against Defendant Wegmans Food Markets, Inc. ("Wegmans") in the amount of $351,551.86. Tax Matrix now seeks a new trial on damages, or, in the alternative, to mold the verdict to apply pre-judgment interest. Wegmans opposes the motion for a new trial on damages on both procedural and substantive grounds. Wegmans does not oppose the alternative motion to mold the verdict to apply interest, but it disputes the proper amount of that interest. For the reasons that follow, the Court will deny Tax Matrix's motion for a new trial on damages but grant in part and deny in part its motion to mold the verdict to apply pre-judgment interest.

## I. BACKGROUND

The dispute in this case arose out of a business relationship between Tax Matrix, a tax consulting firm, and Wegmans, a regional supermarket chain. Pursuant to a written contingency fee arrangement (the "Letter Agreement"), Tax Matrix was to provide certain tax consulting services to Wegmans. The lawsuit concerned Tax Matrix's defense of Wegmans during an audit by the State of Maryland that commenced in October 2011 and closed in July 2013 (the "Maryland audit"). The issue before the Court was whether the work performed by Tax Matrix in connection with the Maryland audit fell within the scope of work contemplated by the Letter Agreement, or whether some other, unwritten fee arrangement applied.

Tax Matrix brought state law claims against Wegmans for breach of contract or, in the alternative, unjust enrichment. Wegmans, in exchange, filed counterclaims against Tax Matrix for breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, and breach of contract. Both parties moved for summary judgment.

The Court ultimately concluded that the Letter Agreement was fairly susceptible to different reasonable interpretations as to whether it governed Tax Matrix's services in connection with the Maryland audit, and accordingly, the Court (1) denied summary judgment to Tax Matrix on Tax Matrix's

2

breach of contract claim; (2) denied summary judgment to Wegmans on Tax Matrix's breach of contract claim; and (3) granted summary judgment in favor of Tax Matrix on all of Wegmans' counterclaims.

**II. STANDARDS OF REVIEW**

    A.    Motion for New Trial on Damages

After a jury trial, a court "may, on motion, grant a new trial on all or some of the issues--and to any party--. . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). In diversity cases in which state law "governs the claims for relief," state law also "suppl[ies] the test for federal-court review of the size of the verdict." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426 (1996)[1]; see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S.

---

[1] The Supreme Court granted certiorari in Gasperini expressly for the purpose of addressing the "important question regarding the standard a federal court uses to measure the alleged excessiveness of a jury's verdict in an action for damages based on state law." Gasperini, 518 U.S. at 422. To answer this question, the Court undertook a full-fledged Erie analysis, noting that "[f]ederal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law" and that, in Gasperini, both state and federal interests could be simultaneously accommodated. Id. at 426; see also id. at 437 ("[The State]'s dominant interest can be respected, without disrupting the federal system, once it is recognized that the federal district court is capable of performing the checking function, i.e., that court can apply the State's . . . standard in line with [State] case law . . . .").

3

257, 279 (1989) ("In reviewing an award of . . . damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.").

Under Pennsylvania law, which supplies the applicable standard for use in making a Rule 59(a) determination in this case, "[a] trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it 'shocks one's sense of justice.'" Neison v. Hines, 653 A.2d 634, 636 (Pa. 1995) (quoting Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994)). A damages award "shocks the conscience" if it "simply is not reasonable and bears no rational relationship to the evidence presented at trial." Davis v. Steigerwalt, 822 A.2d 22, 28 (Pa. Super. Ct. 2003); see also Kiser, 648 A.2d at 4 ("A jury verdict is set aside . . . when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff.").

B. Award of Pre-Judgment Interest

28 U.S.C. § 1961(a) provides, in relevant part, that "[i]nterest shall be allowed on any money judgment in a civil

4

case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). "Under Pennsylvania law, the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a prevailing party is entitled." ECEM European Chem. Mktg. B.V. v. Purolite Co., 451 F. App'x 73, 79 (3d Cir. 2011) (citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)).

**III. MOTION FOR NEW TRIAL ON DAMAGES**

Tax Matrix moves for a new trial on damages pursuant to Federal Rule of Civil Procedure 59 on the basis that "(a) the amount of the verdict was against the weight of the evidence presented at trial; (b) the amount of the verdict was substantially less than was unquestionably proven by Plaintiff's uncontradicted and undisputed evidence; (c) statements made by counsel for Defendant in his opening statement were not supported by evidence submitted at trial; (d) arguments made by counsel for Defendant in his closing argument on damages were based on facts not in evidence; and (e) any and all other bases/reasons . . . ." Mot. New Trial Damages ¶ 4, ECF No. 125.

In Tax Matrix's view, the jury had only one reasonable method by which to calculate damages. Tax Matrix argues that, because the jury found in the first phase of the trial that "the Letter Agreement in fact applied to Tax Matrix's reductive work on the Maryland Audit, the only remaining question for the jury in Phase 2 of the trial was: What was the appropriate starting point for calculating Tax Matrix's 25% contingency fee?" Mem. Supporting Mot. New Trial Damages at 3, ECF No. 135. According to Tax Matrix, "[t]his should have been a simple answer based on a mechanical application of the Letter Agreement" based on the following rationale:

> Given the undisputed fact that Tax Matrix was engaged by Wegmans to defend the Maryland Audit from the very beginning, i.e., before any tax deficiency numbers were ever issued by the State, the only reasonable (or even possible) conclusion is that the $4.6 million deficiency from the First Workpapers is the starting point, and therefore the proper measure of contract damages under the Letter Agreement should have been the full amount of the Invoice for roughly $1.37 million.

Id. at 3-4 (emphasis in original).

Tax Matrix theorizes that, "[r]unning contrary to the weight of the evidence presented at trial, the jury's verdict was no doubt the product of unfair prejudice . . . ." Id. at 11. Specifically, Tax Matrix argues that Wegmans improperly introduced a certain exhibit as substantive evidence, despite a previous ruling by the Court permitting the use of that exhibit

6

only for the limited purpose of impeachment. See id. at 11-12. Tax Matrix also argues that Wegmans "wrongly argued facts not in evidence" during its summation, including that "the State of Maryland actually 'intended' to issue different (lower) initial deficiency numbers in the First Workpapers than it actually did." Id. at 12.

Tax Matrix concludes that, because the jury arrived at a result that was not the full amount of the $1.37 million invoice, "it is clear that the jury's damage award was plucked out of thin air." Id. at 11 (emphasis omitted). Tax Matrix argues that the jury's damage award in the amount of $351,551.86 "bears 'no reasonable relation' to the uncontroverted facts proven at trial and has no nexus to the Letter Agreement the jury was charged with enforcing." Id. (quoting Kiser, 648 A.2d at 4); see also id. at 14 (arguing that it "should 'shock the conscience' of the Court" that the jury "apparently plucked a lesser figure from thin air" than the amount it should have calculated based on "undisputed evidence that the First Workpapers reflected a tax deficiency of $4.6 million and Tax Matrix was specifically instructed to and did reduce that figure." (emphasis omitted)).

After attacking Tax Matrix's motion on procedural grounds,[2] Wegmans responds that Tax Matrix's argument fails on the merits because Tax Matrix's "post-trial contention that 'the

---

[2] Wegmans opens its response brief by arguing that the Court cannot grant the relief Tax Matrix requests because "Tax Matrix waived any post-trial attack on the sufficiency of the evidence by failing to move for a directed verdict at the close of proof." Resp. Opp. Mot. New Trial Damages at 1, ECF No. 136 [hereinafter, Resp.]. Wegmans cites Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991), to support its assertion that "[i]t has long been the rule in this Circuit that, to mount a post-trial attack on the sufficiency of the evidence under Rule 50 or Rule 59 (as Tax Matrix does here), the aggrieved party must first move for a directed verdict at the close of all of the evidence." Resp. at 2. Wegmans argues that "[t]here is no question that Tax Matrix did not move for [a] directed verdict on damages at the close of proof," and therefore that "Tax Matrix cannot now take the 'extreme position that the state of the record entitle[d] [it] to judgment, i.e., that evidence the jury was not at liberty to reject dictated a judgment in [its] favor.'" Id. at 3-4 (quoting Greenleaf v. Garlock, Inc., 174 F.3d 352, 365 (3d Cir. 1999)).

Tax Matrix replies that Greenleaf actually supports its motion, because the Third Circuit in Greenleaf "permitted a Rule 59 motion in absence of a prior Rule 50 motion, and explained the difference between a defendant arguing the sufficiency of the evidence, on one hand, and a plaintiff arguing that the jury's verdict[] was against weight of the evidence, on the other." Reply Mem. at 1, ECF No. 137-2.

In its surreply, Wegmans acknowledges that "a weight of the evidence argument is not waived by the failure to timely file a Rule 50 motion," but argues that Tax Matrix has mounted "a sufficiency of the evidence challenge, not a weight of the evidence challenge." Surreply Mem. at 1-2, ECF No. 138-1.

The Court need not decide whether Tax Matrix's argument is based on the weight versus the sufficiency of the evidence, because, even assuming that Tax Matrix did not waive its right to request a new trial on damages, the Court finds, for the reasons detailed in this memorandum, that Tax Matrix's argument for a new trial on damages has no merit.

only logical starting point' for calculating the contingency fee is the first number received from Maryland" is "inconsistent" with the testimony of a certain witness for Tax Matrix, Stephen Feathers,[3] who "testified that his company was entitled to a contingency fee under the Letter Agreement only for reductions that it achieved through its own efforts, and not from the efforts of someone else." Resp. Opp. Mot. New Trial Damages at 5-6, ECF No. 136 [hereinafter, Resp.] (quoting Mem. Supporting Mot. New Trial Damages at 4). In Wegmans' view, "that first number received is irrelevant" for purposes of calculating the contingency fee because, "according to Mr. Feathers, Tax Matrix's burden was to show what reductions it was responsible for, not merely point to the first number and perform 'a mechanical application of the Letter Agreement.'" Id. at 6 (quoting Mem. Supporting Mot. New Trial Damages at 3). In other words, Wegmans believes that "Tax Matrix simply failed to meet its burden that it was responsible for all of the reductions claimed." Id.

In addition to Mr. Feathers' testimony, Wegmans cites the testimony of another witness, Melissa Myers, the Tax Matrix employee who worked on the Maryland audit and "concede[d] that the reduction achieved by applying the error factor and

---

[3] Mr. Feathers was the individual who negotiated and signed the Letter Agreement on behalf of Tax Matrix.

9

correcting the arithmetical error was not her doing, but that of Maryland's auditors." Id. at 7. Wegmans contends that "[t]his admission, when coupled with Mr. Feathers' explanation of what was and what was not compensable under the Letter Agreement, was ample evidence for the [j]ury to conclude that Tax Matrix was not entitled to a contingency fee based on a reduction from the initial $4.6 million attributable to Maryland's correction of its own errors." Id. at 8.[4] In light of the Feathers and Myers testimony, Wegmans concludes that the jury's award was "rationally based on the testimony of Tax Matrix's own witnesses, and the limited documentary evidence Tax Matrix presented at trial, and thus should be upheld." Id. at 10.

With regard to Tax Matrix's argument concerning Exhibit D-7, Wegmans responds that it referred to this exhibit not during the damages phase of the trial, but instead during the liability phase--and "Tax Matrix's speculation that a reference to this exhibit in Phase 1 had an impact on the damages awarded in Phase 2 is no grounds for a new trial." Id.

---

[4] Wegmans adds that "the decision to argue only for the full value of the invoice, and not give the [j]ury the means to calculate any lesser amount, was a tactical one made by Tax Matrix in order to force the [j]ury to award the full sum of the invoice." Id.; see also id. ("Once the [j]ury concluded . . . that a full value award was not appropriate in light of the Feathers and Myers testimony, Tax Matrix gave it no assistance in closing arguments (or anywhere else) on how to calculate what amount would properly compensate Tax Matrix for the work it actually performed on the Maryland audit."). The Court agrees that Tax Matrix made this decision for tactical purposes.

10

at 12.[5] Wegmans also argues in a footnote that Tax Matrix's argument regarding "wrongly argued facts not in evidence" "distorts the record." Id. at 12 n.5. Rather than "claim[ing] to have substantive evidence of the auditor's intent," as Tax Matrix's motion seems to suggest, Wegmans claims that it merely "suggested an inference from the evidence in the record--the workpapers themselves--that the [j]ury was free to accept or reject." Id.

In its surreply brief, Wegmans summarizes its argument as follows:

> As the [j]ury heard during the course of the trial, the largest reductions from the initial $4.6MM deficiency figure were the result of the Maryland auditors' self-correction of their arithmetical mistakes. According to Ms. Myers, her advocacy was not what caused these reductions, and according to Mr. Feathers, Tax Matrix was not entitled to recover a contingency fee for reductions it did not cause. Although Tax Matrix continues to argue in post-trial that its 'advocacy was indeed the catalyst in obtaining these intermediate reductions in [Wegmans] tax liability,' this is mere surmise, for Tax Matrix [chose] not to call the Maryland auditors and elicit proof as to what spurred these corrections. Given Ms.

---

[5] Wegmans also points out that Tax Matrix did not object to Wegmans' publishing Exhibit D-7 to the jury, or to referencing that exhibit during closing. Id. at 11. Consequently, Wegmans argues, "[Tax Matrix] has waived the right to argue any prejudice now." Id. (citing Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) ("[A] party who fails to object to errors at trial waives the right to complain about them following trial."); Patel v. Patel, No. 14-2949, 2016 U.S. Dist. LEXIS 68446, at *24-25 (E.D. Pa. May 25, 2016) ("Defendant's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's cross-examination or closing remarks.")).

11

> Myers' testimony that she did not identify the
> arithmetic errors, and accordingly, did not ask that
> they be corrected, the [j]ury was free to conclude
> that Tax Matrix was not in fact the 'catalyst' for
> these reductions. There is certainly nothing shocking
> about that conclusion, nor is it legitimate to say
> that Tax Matrix has 'unquestionably proven' by
> 'uncontradicted and undisputed evidence' that it was
> responsible for the initial, arithmetical reductions.

Surreply Mem. at 3, ECF No. 138-1 (citations omitted).

The Court finds this argument persuasive and will deny Tax Matrix's motion for a new trial on damages. The Court does not agree with Tax Matrix that the jury's calculation "bears 'no reasonable relation' to the uncontroverted facts proven at trial." Mem. Supporting Mot. New Trial Damages at 11 (quoting Kiser, 648 A.2d at 4). The Court finds instead that the damages award was not "contrary to the evidence," let alone to the degree that it "'shocks one's sense of justice,'" Neison, 653 A.2d at 636 (quoting Kiser, 648 A.2d at 4), because the jury reasonably could have determined, based on the testimony presented at trial, that (1) Tax Matrix did not cause each and every reduction, and (2) Tax Matrix was not entitled to recover a contingency fee for reductions that it did not cause.

**IV. MOTION TO MOLD VERDICT TO APPLY PRE-JUDGMENT INTEREST**

In the alternative to its motion for a new trial on damages, Tax Matrix seeks to have the Court mold the verdict to apply pre-judgment interest. Tax Matrix argues that "since the

12

Letter Agreement obligated Wegmans to pay the Invoice within ten days of receipt and the Invoice was received by Wegmans on August 5, 2013, prejudgment interest at 6% per annum should be awarded from August 16, 2013." Mem. Supporting Mot. New Trial Damages at 14. As of the date of Tax Matrix's filing, this amount was "$60,326.30, and the per diem rate is $57.79." Mot. New Trial Damages ¶ 5.

Wegmans "does not dispute that Tax Matrix is entitled to pre-judgment interest under Pennsylvania law, and post-judgment interest at the federal rate." Resp. Opp. Mot. New Trial Damages at 13. Wegmans argues, however, that "Tax Matrix's request to mold the judgment to include interest asks for too much." Id. Wegmans bases its argument on "a distinction between pre- and post-judgment interest that has escaped Tax Matrix." Id. (citing Fishman Org., Inc. v. Frick Transfer, Inc., No. 11-4598, 2014 WL 3818351, at *1 (E.D. Pa. Aug. 4, 2014) ("Plaintiff incorrectly argues . . . that interest should apply from the June 2007 date until the date the judgment is satisfied, ignoring the distinction between pre-judgment and post-judgment interest[.] [Plaintiff] is entitled to the 6% prejudgment interest rate . . . only up to the . . . date of the entry of the final judgment.")). Given this distinction, Wegmans believes that "Tax Matrix is entitled to a 6% interest rate from the date

13

payment was due (August 16, 2013) until judgment was entered (June 7, 2016), and no further." Id.

The parties agree not only that Tax Matrix is entitled to interest, but they also agree on a per diem rate of $57.79 and a start date of August 16, 2013 for application of that rate. The Court will therefore grant Tax Matrix's motion to mold the verdict. The application of this rate will be limited, however, to the date that judgment was entered.[6]

**V. CONCLUSION**

For the foregoing reasons, the Court will deny Tax Matrix's motion for a new trial on damages but grant in part and deny in part its motion to mold the verdict to apply pre-judgment interest. Under Pennsylvania law, Tax Matrix is entitled to a 6% interest rate from the date on which payment was due (i.e., August 16, 2013) until the date on which judgment was entered (i.e., June 7, 2016). This amounts to $57.79 per diem, for a total of $59,292.54.

---

[6] The Court notes that, although Tax Matrix initially requested application of the $57.79 per diem rate "going forward," Mot. New Trial Damages at 2, it has not challenged Wegmans' contention regarding the distinction between pre- and post-judgment interest that limits application of the per diem rate to the date on which judgment was entered.

14